IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LINDA PALMER,                     )
                                  )
             Plaintiff,           )
                                  )
vs.                               )          Case No. 4:16-cv-534-TMP
                                  )
CAROLYN W. COLVIN,                )
Commissioner of Social Security,  )
                                  )
             Defendant.           )
                                  )

## MEMORANDUM OPINION

### I.      Introduction

The plaintiff, Linda Palmer, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Title II disabled widow's benefits, and Title XVI supplemental security income, alleging a disability date beginning March 4, 2013.   Ms. Palmer timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).   Accordingly, the court enters this Memorandum Opinion.

Ms. Palmer was 54 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has completed two years of college education.   (Tr. at

237).  Her only past work experience was as a maintenance worker.  (*Id.*)  She is the unmarried widow of an insured worker,[1] is more than 50 years old, and the Commissioner does not dispute that she has met the non-disability requirements for widow's benefits under Section 202(e) of the Social Security Act.  (Tr. at 58).  Ms. Palmer claims that she became disabled on March 4, 2013,[2] due to degenerative disc disease of the lumbar spine, leg pain, and knee pain.  (Tr. 79, 236).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If she is, the claimant is not disabled and the evaluation stops.  *Id*.  If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These

---

[1]        The claimant's husband died on January 22, 2013.

[2]        Her original alleged onset date was in 2009, but she amended to assert a later date of 2011, which was linked to a car accident which she alleged exacerbated her existing back condition, although there is no record that she sought treatment after the accident.  She amended her onset date again on appeal, asserting that she became disabled in March of 2014, which was the date on which she sought treatment for blurry vision.  The ALJ, apparently in error, refers to a November 2001 original onset date.  (Tr. at 56).

impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.   *Id*.   The decision depends upon the medical evidence in the record.   *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).   If the claimant's impairments are not severe, the analysis stops.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.*   If she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.   20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the

claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Palmer has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision on July 8, 2014. (Tr. at 66). She determined that Ms. Palmer has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 58). According to the ALJ, Ms. Palmer's early degenerative disc disease of the lumbar spine with mild relative asymmetric lateral recess stenosis at L4 left, early bilateral recess stenosis at L5, lumbago and sciatica are considered "severe" based on the requirements set forth in the regulations. (Tr. at 58-59). The ALJ further determined that these impairments

4

neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 17). The ALJ found Ms. Palmer's credibility to be "very questionable." (Tr. at 63). She determined that the plaintiff has the residual functional capacity to perform light work with the following limitations: that she can lift/carry 20 pounds occasionally, 10 pounds frequently; that she is able to sit, stand and/or walk for six hours out of an eight-hour workday; and that she can push/pull as much as she can lift/carry. The ALJ further found that the claimant can occasionally climb ramps and stairs, but should avoid ladders, ropes, or scaffolds, and can occasionally balance. The ALJ determined that the claimant should avoid kneeling and crawling, should avoid work at unprotected heights or around hazardous, moving mechanical parts. She further limited the plaintiff's work to the performance of simple, routine, and repetitive tasks. (Tr. at 59-60).

According to the ALJ, Ms. Palmer is unable to perform any of her past relevant work, and she was an "individual closely approaching advanced age" at the date of alleged onset. (Tr. at 65). The ALJ further noted that Ms. Palmer has at least a high school education and is able to communicate in English. (Tr. at 65). She determined that "transferability of skills is not material to the determination of disability" in this case. (Tr. at 65). The ALJ found that Ms. Palmer has the

residual functional capacity to perform a significant range of light work. (Tr. at 65). Even though Plaintiff cannot perform the full range of light work, the ALJ found that there are a significant number of jobs in the national economy that she is capable of performing, such as assembler, hand packer, and non-postal mail clerk. (Tr. at 66). The ALJ concluded her findings by stating that Plaintiff is "not disabled" under the Social Security Act. (Tr. at 66).

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).    Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.    *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."    *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).    Moreover, failure to apply the correct legal standards is grounds for reversal.    *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Ms. Palmer alleges that the ALJ's decision should be reversed and remanded on any of four reasons.    First, she asserts that the ALJ failed to give proper weight to the opinions of her treating physician, Dr. Tariq.    (Doc. 11, p. 15).    Next, she contends that the Appeals Council erred in refusing to consider the Independent Medical Evaluation ("IME") provided by Dr. Ripka, dated after the date of the ALJ's opinion, without considering whether it was "chronologically relevant."    (Doc. 11,

p. 20).   Third, the plaintiff asserts that the ALJ's denial of benefits was not based on substantial evidence once the evidence submitted to the Appeals Council is considered.   And, last, she argues that the ALJ improperly assessed the plaintiff's credibility by drawing an adverse inference from plaintiff's lack of certain medical treatment.   (Doc. 11, p . 25).   The court finds two of these arguments compelling, and sufficient to require remand.[3]

### A.   Weight Assigned to Treating Physician's Opinion

Ms. Palmer contends that the ALJ failed to properly weigh the opinion of Dr. Muhammad Tariq, the claimant's treating physician, as expressed in a Physical Capacities Form dated March 14, 2014 (Tr. at 367).[4]   (Doc. 11, pp. 15-16).   The Commissioner has responded that the opinion of Dr. Tariq was properly discounted and given "little weight" because it was inconsistent with other evidence in the record.   (Doc. 14, pp. 6-15).

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."

---

[3]   Because the court finds the case is due to be remanded, the issue of the Appeals Council's failure to consider Dr. Ripka's report need not be considered.

[4]   In the Physical Capacities Form, Dr. Tariq that Ms. Palmer could sit or walk for less than 30 minutes, stand for an hour, would be expected to lie down for an hour out of an eight-hour day, and that she could perform task less than 30 minutes without having to take a break.   He also stated that these conditions existed as far back as November 22, 2009.   (Tr. at 367).

*Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997)(internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) . . . was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)(holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its]

judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. *See also* 20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

This is a case where the quantity of medical evidence is relatively low. There is only one report concerning an objective imaging test, and fewer than a dozen records of visits to a primary physician, along with some details of chiropractic care. However, the ALJ did not find that the objective medical records were insufficient to show a severe impairment, and did not deny benefits on that ground. The ALJ did conclude that the plaintiff had sought and received minimal conservative treatment. However, the plaintiff testified plainly that she did not seek treatment for her back pain when her husband was alive because she got relief from the pain by sitting in her hot tub, and that she did not have to work while her husband was alive because

he earned a good living and took care of lawn care and other chores for her. After he died, she explained, she had no income, had to do more physical chores that hurt her, and could not afford to maintain the hot tub, so she got no relief from the pain. She did, however, begin to seek frequent treatment several months after her husband died.

Ms. Palmer was diagnosed with lower back pain in April of 2000. (Tr. at 310). She sought chiropractic care for back pain and leg pain in 2006 and 2007, where a diagnosis of sciatica was made. (Tr. at 313-320). She complained of severe pain in July of 2013, and visited the Quality of Life Clinic in Gadsden, Alabama, where she returned frequently over the next few months.

Dr. Tariq is the internist who treated Ms. Palmer at the Quality of Life Clinic, beginning in July of 2013.[5] Dr. Tariq ordered an MRI of Ms. Palmer's spine, which showed as of August 2013 "obvious desiccation and degeneration of essentially all the lumbar intervertebral disks" and "broad based bulging" with "early bilateral lateral recess stenosis" at L5 and "mild relative asymmetric lateral recess stenosis" at L4, but "no evidence of herniation or other significant intraspinal pathology." (Tr. at 343). Ms. Palmer complained to Dr. Tariq of back and leg pain that had been

---

[5]     There is some reference to treatment in 2007 at the Quality of Life Clinic, where Dr. Tariq practices, but no medical records have been provided to reflect that treatment.

present for 10 years, but said that the pain was worsening. (Tr. at 344-366). She saw Dr. Tariq four more times in the next three months, each time complaining of pain. (*Id.*) He prescribed Ultram[6] and Mobic[7] for her, and later added Flexeril[8] and Lortab.[9] He also instructed her to do back exercises. (*Id.*) In the Physical Capacities Evaluation he completed on March 14, 2014, he opined that Ms. Palmer would be able to sit for less than 30 minutes at a time, would be able to stand for an hour at a time, could walk less than 30 minutes at a time, and must lie down, sleep, or sit with her legs propped at waist level for at least an hour during an 8-hour day. (Tr. at 367). Dr. Tariq's treatment notes are generally consistent with those of her chiropractor, with the scant objective medical records, and with the claimant's own testimony.

---

[6]  Ultram, generically tramadol, is a narcotic-like pain reliever used to treat moderate to severe pain.   https://www.drugs.com/ultram/html

[7]  Mobic, generically meloxicam, is a nonsteroidal anti-inflammatory drug used to treat pain or inflammation caused by arthritis.   https://www.drugs.com/mobic/html

[8]  Flexeril, generically cyclobenzaprine, is a muscle relaxant used to treat skeletal muscle conditions such as pain or injury.     https://www.drugs.com/flexeril/html

[9]  Lortab, a combination of acetaminophen and hydrocodone, is an opioid pain medication used to relieve moderate to severe pain.   https://www.drugs.com/lortab/html

The ALJ assigned "little weight" to Dr. Tariq's assessment of the plaintiff, explaining her reasoning this way:

> The undersigned notes the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another. As the record does note the claimant did report to him of her husband's passing and her difficulty with the bills and he later wrote a letter indicating she could not work and needed assistance with her bills, despite no medical evidence to support such a conclusion. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients [sic] requests and avoid unnecessary doctor/patient tension.

(Tr. at 62). The ALJ went on to state that "the evidence of record nor his own treating records does [sic] not support" Dr. Tariq's opinions. (Tr. at 63). She also noted that his treatment had been "completely conservative" in that he had prescribed only medication and a TENS unit, but not physical therapy or epidurals. (*Id.*)

The plaintiff, however, has testified that she got some relief from the TENS unit, and used it regularly, and that she took the Ultram when she could afford it, and the muscle relaxers. She was, apparently, noncompliant with the Lortab, but she further testified that she was "afraid" of pain pills because when she had taken pain

pills after a surgery in 1992, they it had caused her to pass out repeatedly. (Tr. at 79).[10] She also explained that she was not able to afford additional tests or treatments, and it is at least plausible that Dr. Tariq did not prescribe physical therapy or epidurals because he knew the plaintiff could not afford the treatment. She testified that he had suggested she have a "dye test" but that she could not afford to do that.

Dr. Tariq's treatment notes consistently report that the plaintiff was in pain and that the pain was worsening. His notes, and the records from her chiropractor, bolster the credibility of his opinion. While her treatment was limited and the quantity of medical evidence is relatively small for a case of this type, there is no evidence in the record that contradicts Dr. Tariq's opinions from the Physical Capacities Evaluation. Finally, the claimant's testimony about the reasons for the limited treatment must also be considered.

The ALJ's assignment of "little weight" to the treating physician's opinion cannot be upheld absent a showing of "good cause" to give a treating physician's opinion less than substantial weight. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440. In this case, the treating physician's

---

[10]     Her assertions concerning her 1992 surgery and an allergic reaction to Darvocet, the pain killer prescribed thereafter, are well documented. (*See* Tr. at 326 - 27; 387).

opinion is bolstered by the evidence. The MRI performed in August 2013, some seven months before Dr. Tariq completed the Physical Capacities Evaluation in March 2014, confirmed "obvious desiccation and degeneration of essentially all the lumbar intervertebral disks." There is no medical evidence or consultative evaluation that supports a contrary finding,[11] and Dr. Tariq's opinion is consistent with his own medical records. The ALJ's speculation that Dr. Tariq filled out the Physical Capacities Evaluation out of sympathy for Ms. Palmer, or due to her supposed hectoring of him, is utterly unsupported by any evidence. Under Phillips, there is insufficient evidence in the record to support the ALJ's finding of "good cause" to give the treating physician's opinion "little weight." Because the ALJ failed to properly credit the treating physician's opinion, the ALJ's decision is due to be remanded.

### B. Assessment of Plaintiff's Credibility

The ALJ also determined that Ms. Palmer's credibility was "very questionable." The plaintiff now asserts that the ALJ failed to properly assess her credibility by failing to consider her explanations for the lack of more extensive (or

---

[11] Although the ALJ cited the consultative evaluation of Dr. Iyer, she did not explicit rely upon it to contradict Dr. Tariq's opinions. Not surprising, given that Dr. Iyer also confirmed that plaintiff "may have some impairment of functions involving: sitting, standing, walking, bending, twisting, lifting, and carrying." (Tr. at 323). These findings bolster, not contradict, Dr. Tariq.

expensive) medical treatment.   The Commissioner has argued that the ALJ properly reached her determination regarding the plaintiff's credibility.

The Eleventh Circuit Court of Appeals has held that an ALJ must "clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms."   *Dyer v. Barnhart*, 395 F.3d 1206 (2005), quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).   A credibility determination is not permitted to be a "broad rejection" that would demonstrate to the court that the ALJ did not consider the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1211, quoting *Foote*, 67 F.3d at 1561.   An ALJ has "wide latitude as a finder of fact" to evaluate credibility, but that evaluation must rest on a "clear articulation" of the relevant facts and the governing law.   *See Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984).

In this case, the ALJ cited facts purportedly weighing on the claimant's credibility, but they clearly were not relevant.   She wrote:

The undersigned finds the claimant's credibility to be very questionable as the claimant testified at the hearing that she worked very little in the past because she did not have to work; her husband had a very good job and he had recently passed away.   The claimant stated that her husband bought her a hot tub and that really helped her back

but since he has passed (January of 2011[sic]),[12] she has been unable to afford the chemicals for both her **hot tub** and **pool.** The undersigned also notes the claimant appeared to have a nice suntan, her hair was totally highlighted and her nails were done in French manicure.

(Tr. at 63)(emphasis in original). Earlier in the opinion, the ALJ made the same observations about the plaintiff's hot tub, pool, suntan, hair, and nails in her discussion of the plaintiff's RFC:

At the hearing, the claimant testified that she is disabled and unable to work due to her impairments. However, the claimant stated that she worked very little in the past because she did not have to work; her husband had a very good job as a welder and he had recently passed away. She conveyed that her husband bought her a hot tub and that really helped her back but since his passing, she has been unable to afford the chemicals for both her hot tub and her pool. It should be noted that the undersigned observed that the claimant appeared to have a nice suntan; the claimant's hair was completely highlighted and her nails were manicured in a French manicure style.

(Tr. at 60). At the hearing, the ALJ did not ask the plaintiff who paid or what was paid for hairstyling, or manicures, or obtaining a suntan. Without evidence that she was able to afford expensive salons, but unable to afford medical treatment, this fact has no bearing on her credibility. Without seeking an explanation about the plaintiff's spending, the ALJ has no more reason to believe that the plaintiff was

---

[12] The record actually reflects that her husband died in January of 2013.

untruthful about her ability to pay for medical treatment than to believe that she spends her time sitting in the sun, painting her own nails, and highlighting her hair with peroxide B, or that a friend treated her to a spa day in anticipation of her hearing date. The ALJ merely speculated, without bothering to inquire, that the plaintiff spent large amounts of money on spa or salon treatments.

The ALJ also connected Ms. Palmer's very limited experience in the paid workforce to her credibility. The fact that Ms. Palmer relied upon her husband's income instead of being employed, however, is not relevant to her entitlement to benefits. Widow's benefits provided by the SSA are not contingent on the plaintiff's status as a wage-earner—quite the opposite. There is no apparent correlation between choosing the role of a traditional housewife or paid work outside of the home, and being able to testify truthfully. The ALJ's reference, twice, to Ms. Palmer's appearance and lifestyle choice suggests to the undersigned that the credibility determination was based on some prejudice or prejudgment rather than on "relevant facts" and "applicable law."[13]

The ALJ further discredited the plaintiff's testimony because she said she was unable to afford the Ultram, while admitting that she continued to smoke cigarettes.

---

[13]     In a question posed to the plaintiff at the hearing, the ALJ referred to Ms. Palmer's living situation prior to her husband's death as "a nice little set up."   (Tr. at 79).

However, the plaintiff stated, and the ALJ adopted in her findings, that the plaintiff had a non-severe "nicotine dependence," and that "the claimant['s] smoking decreased from one pack a day to a half of pack [sic] of cigarettes daily." (Tr. at 59). The fact that she had a nicotine addiction but still decreased her smoking because of the expense of cigarettes supports her testimony that she testified truthfully about her ability to afford medical treatment.

The case cited by the Commissioner, *East v. Barnhart*, 197 Fed. App'x 899, 905 (11th Cir. 2006), is easily distinguished. *East* involved a plaintiff who "used her children's child support to buy up to 45 packs of cigarettes per month," which the appellate court found provided a "reason for discrediting" the plaintiff.[14] In this case, the plaintiff's purchase of cigarettes was not out of someone else's funds and is far less egregious, even if unwise. She told the ALJ at the hearing that she did still smoke but "not as much because they're too expensive" so she had "cut [] down a whole lot." (Tr. at 81). If anything, this testimony is consistent with her testimony that she could not afford to buy her medication.

---

[14] The court in *East* also noted that the plaintiff did not argue that the reasons given by the ALJ for discrediting her testimony were not valid reasons. 197 Fed. App'x at 905.

The ALJ also questions Ms. Palmer's credibility based upon her lack of treatment before 2013, her daily activities, and her noncompliance with medical advice.   While the plaintiff has received very little medical treatment, the ALJ noted that the plaintiff had explained that "her husband was alive then and she did not have to do things for herself; also, her hot tub was working," but that "since she has had to do things for herself, she stated her back has started hurting."   (Tr. at 61).   As for daily activities, the ALJ reported that Ms. Palmer "lives alone, she is able to wash dishes, do her own laundry, prepare simple meals, drive and grocery shop."   This assessment of her activities, however, fails to take into account the plaintiff's testimony that she has been "having to ask other people to try to help me," and that she does "minimum housework," cannot vacuum because of her pain, and usually fixes "a quick sandwich" instead of cooking.   (Tr. at 82).   Finally, the ALJ's insistence that Ms. Palmer was noncompliant with medical advice fails to give any recognition to the fact that she testified, and medical records showed, that she had suffered a very bad reaction to narcotic pain medication in 1992 causing her to black out, and that she had been very "afraid" of pain pills since.   The ALJ also points out that the plaintiff did not perform back exercises she was instructed to do by Dr. Tariq.   She explained, however, that he never shown her what kind of exercises to

do, and his records do not contradict this statement.   (Tr. at 83).   Furthermore, the ALJ makes much of the fact that the plaintiff testified that Dr. Tariq recommended she get a "dye" test, which she did not have performed.   But the ALJ does not mention that Ms. Palmer clearly stated that she did not get the test because she had not been able to pay the bills for the MRI, and that the bill had been sent to a collection agency.   Claimant stated, "[s]o I can't even pay that one and I don't know how I would get the other one."   (Tr. at 88-89).

The court recognizes that a lack of treatment and noncompliance can support conclusions that a plaintiff is not credible.   However, pursuant to Social Security Ruling 96-7p,[15] the ALJ still has a duty to consider the claimant's explanation, including explanations regarding her ability to pay, without prejudging her.   In this case, the ALJ's repeated references to the plaintiff's lifestyle and appearance strongly suggest that the ALJ drew impermissible inferences from the plaintiff's lack of treatment, and failed to view her daily activities in the proper context.   It has

---

[15]     SSR 97-7p, which was in effect at the time of the claimant's adjudication by the ALJ, has been superseded by SSR 16-3p, which took effect in March of 2016.   The new regulation removes the term "credibility" from the policy, and clarifies that "subjective symptom evaluation is not an examination of an individual's character."   See SSR 16-3p, 2016 WL 1119029 at *1.   The plaintiff has filed a motion to remand on the basis that SSR 16-3p is retroactive. (Doc. 16).   Because the undersigned finds this matter is due to be remanded even under the then-existing regulations, the motion is DENIED AS MOOT.

been established that an "ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and *adequate* reasons for rejecting that testimony."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)(emphasis added).   Because the ALJ in this case focused her attention on factors that did not relate to Ms. Palmer's "pain and other subjective symptoms," her reasons for discounting her credibility were not adequate, and the matter is due to be remanded.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Palmer's arguments, the undersigned Magistrate Judge finds the Commissioner's decision is not supported by substantial evidence and is not in accord with the applicable law; therefore, the matter is REVERSED and REMANDED.

DATED the 26th day of June, 2017.


_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE